VICTOR ROSARIO, Appellant-Respondent, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 42836.)

Third Department, December 4, 1969.

*Zapata & Halbert* (*Sara Halbert* of counsel), for appellant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for respondent-appellant.

HERLIHY, P. J. These are cross appeals from a judgment of the Court of Claims, entered October 11, 1966, awarding damages to the claimant. (Opn. 51 Misc 2d 790.)

The claimant was arrested in June of 1958 and charged with various crimes to which he pleaded not guilty. Subsequently

he was examined by two psychiatrists at Bellevue Hospital, and following a proper hearing at which he was represented by counsel he was committed to Matteawan State Hospital upon the ground that he was incapable of understanding the charges against him or assisting with his defense. The continuing diagnosis of insanity made by the staff at Matteawan has been found by the trial court to have been based upon the assumption by the doctors that the various statements made by the claimant were false and delusional. One important such statement was that a rival for the affections of claimant's wife had deliberately cut his arm, caught the blood in a glass, and thereafter drank it. The Court of Claims found that in fact these various statements, particularly the one as to drinking blood, were true and, accordingly, that claimant was not at any time insane during his incarceration at Matteawan. The court further found that it was negligence on the part of the doctors as agents of the State not to have investigated as to the truth or falsity of the claimant's assumed delusions prior to the time when claimant's counsel brought evidence of the truth of claimant's statements to the attention of the doctors at Matteawan in 1962.

Upon the present record, the claim must be dismissed as a matter of law. To be wrongfully incarcerated in an institution such as Matteawan is tragic and, under the circumstances, unfortunate. But where the incarceration results from an error of fact, stemming from the exercise of a physician's professional judgment, upon which a further factual and legal conclusion is based, there can be no recovery against the State.

Negligence on the part of State officials in the performance of their duties is actionable against the State. (See *Waterman* v. *State of New York*, 33 A D 2d 716.) While the alleged injury to claimant in this case is his continued incarceration, his initial incarceration resulted from the orderly application of the statutes as they governed his situation. This incarceration was based on court action, and the alleged error of fact upon which the court acted was not caused by any negligence of the State's doctors.

There was a hearing prior to commitment, which gave the relator the opportunity to contest the finding of incompetency. This right included, of course, the right to show that the "delusions" were in fact true and, therefore, not delusions. Under the circumstances that the relator was committed, there was no reason for the doctors at Matteawan to question the statements of claimant to ascertain the truth thereof. The writ of habeas corpus was available to claimant. Thus, he was not simply at the mercy of such investigative procedures as the

doctors might follow, but he could have destroyed their diagnosis by showing that his statements were true. We recognize that the claimant, by proceeding *pro se* in habeas corpus, might not have had the ability to establish that his statements were not delusions, but there was a remedy available, and in fact there was such a hearing on October 23, 1961.

The record contains various letters and notes of inquiry as to the claimant's condition while he was in the facility. The record in its entirety establishes that the State's physicians and employees were not guilty of any negligence but that at most they were guilty of an erroneous diagnosis. What facts are necessary in order to make a proper diagnosis is a matter of professional judgment, for which, unless acting in disregard of such judgment, the State may not be held liable. (See *Higgins* v. *State of New York*, 24 A D 2d 147.)

The Court of Claims properly excluded any claim for damages prior to October 23, 1961. On this date the claimant had a hearing before a Justice of the Supreme Court in Poughkeepsie. The claimant told the court the entire history in the matter leading up to his detention at Matteawan. The court found on the basis of the medical testimony that claimant still suffered from a mentally disabling condition and that further detention was necessary. Any negligence on the part of the State's doctors in failing to discover that the delusions were not in fact delusions would result in no direct damages since the court at that time found the claimant not yet mentally fit to answer the criminal charges pending against him. (See *Dennison* v. *State of New York*, 28 A D 2d 608, affd. 23 N Y 2d 996.)

The judgment should be reversed, on the law and the facts, without costs, and claim dismissed.

REYNOLDS, STALEY, JR., GREENBLOTT and SWEENEY, JJ., concur.

Judgment reversed, on the law and the facts, without costs, and claim dismissed.