Albert A. Blinder, J.
Claimant moves by motion No. M-19549 for an order pursuant to CPLR 3212 granting summary judgment to claimant on the issue of liability and further ordering an immediate trial of the issues of fact relating to the amount of damages.
The defendant moves by cross motion No. M-19621 for an order pursuant to CPLR 3211 (subd [a], pars 2, 5, 7) and sections 8 and 10 of the Court of Claims Act, dismissing the claim on the grounds that the claim fails to state a cause of action and it was untimely served and filed.
The claim, which was filed on January 14, 1977, alleges that the Secretary of State erred on April 20, 1973 when he issued a certificate that stated that there was no financing statement filed involving Leasemore Equipment, Inc. as of April 9, 1973 when, in fact, such a financing statement was on record. Airway Equipment Rental Company, Inc., a company which had been merged into Hudleasco, Inc., the claimant, allegedly acted in reliance on the certificate and purchased certain property from Leasemore Equipment, Inc. As a result, it alleges it suffered damages in the sum of $14,060 from an action brought against it by a secured party, which had been *1058 named in the financing statement filed on or about January 18, 1972.
The damages, it is alleged, arose from the defective, erroneous and mistaken certificate issued by the Secretary of State pursuant to section 9-407 of the Uniform Commercial Code.
The claim alleges that it was filed within 90 days after the claim accrued, as required by law, stating that the claim accrued on or about November 5, 1976 when the claimant’s damages became ascertainable.
The defendant, by its verified answer filed on March 24, 1977, admits that "on or about April 20, 1973 the office of the Secretary of State of New York issued a certificate which recited that there was 'no record’ of any financial statement as of April 9, 1973, when in fact, there was.” The verified answer sets forth two affirmative defenses; (1) that the claim was untimely filed and (2) that the acts complained of are within the prerogative of the sovereign for which liability was not waived by section 8 of the Court of Claims Act.
The court will first review the question of timeliness of filing. As above stated, the claim alleges the receipt on or about April 20, 1973, of a defective certificate reciting that there was no record of any financing statement, as of April 9, 1973 when, in fact, such a financing statement was on record with the Secretary of State.
An examination of the affidavit submitted in support of the claimant’s motion, as well as the exhibits attached thereto, indicates that the claimant suffered damages by virtue of an action brought by Industralease Automated & Scientific Equipment Corp. The Industralease action was initiated by an order to show cause dated September 3, 1974 seeking to replevy certain chattels. In conjunction with the replevin action a complaint was served seeking damages in the sum of $25,000 on behalf of Industralease, as plaintiff, against the claimant, Hudleasco, Inc., as defendant. Hudleasco’s answer was dated November 5, 1974. Thereafter, the parties entered into a stipulation of settlement and discontinuance dated November 5, 1976. Claimant asserts that November 5, 1976 is the date that the claim accrued since it was not until the execution of the stipulation that it could ascertain the full extent of its damages. It is clear that if the claim accrued on November 5, 1976, it is timely filed (filed with the Clerk of the *1059 Court on January 14, 1977 and served on the Attorney-General on January 21, 1977).
The defendant contends that the wrong complained of occurred in April of 1973 and that, in any event, when the claimant was served in the action by Industralease it was on notice that it was liable for a maximum of $25,000 plus interest. Therefore, it is argued, the receipt of those pleadings marked the date the claim accrued. As authority the defendant cites Heritage Corp. of N. Y. v New York State Thruway Auth. (44 AD2d 869). The Heritage case involved an issue which arose out of certain leases of real property to the New York State Thruway Authority. A controversy existed as to damages due to the condition of the premises leased and certain conditions under the leases. The Third Department held (p 869) "that damages were readily observable and ascertainable as of the date the premises were surrendered, albeit they might have been indefinite to some extent. Accordingly, the claimant failed to file the claim within the six-month period required by the Court of Claims Act.” The defendant also cites Davis v State of New York (84 Misc 2d 597, revd 54 AD2d 126) which involved a situation where, as a result of the wrongful release of confidential information by the State Division of Licenses, claimant was fired from his job as a security guard. In Davis this court held that the claim accrued when the information was released and not when the claimant discovered its wrongful release.
The claimant cites authorities for the proposition that the claim accrued when it matured, and it did not mature, for purposes of filing, until the extent of the damages could be ascertained. One of these is Edlux Constr. Corp. v State of New York (252 App Div 373, affd 277 NY 635). Edlux held that claim accrued does not mean and is not identical with the expression cause of action accrued. Rather, the Third Department stated, a claim accrues when it matures and that the words "claim accrued” have the same meaning as "damages accrued”. (Also see Otis Elevator Co. v State of New York, 52 AD2d 380, 382.)
In cases involving continuing torts, it has often been held that the 90-day time period does not start to run until the extent of the damages can be ascertained. (See Taylor v State of New York, 302 NY 177; Chartrand v State of New York, 46 AD2d 942; Terry Contr. v State of New York, 27 AD2d 499.) However, similar results have been obtained in cases where *1060 no element of continuing wrong existed. (Waterman v State of New York, 19 AD2d 264, 266, cited for this proposition in Bronxville Palmer v State of New York, 36 AD2d 647, 648.)
In commenting on the various rules of accrual of claims under the Court of Claims Act, Judge Breitel stated in Boland v State of New York (30 NY2d 337, 342) "[t]hus, the accrual of claims under the Court of Claims Act has received various kinds of treatment, artificial but effective to save claims or to permit early assertion [citations omitted]”.
In the case at bar, in view of the foregoing, for the court to adopt the defendant’s contention it must hold that the claim accrued when claimant was served with papers in the replevin action in August of 1974. Such a result would be illogical. The pleading and moving papers in the original action would, at most, have contained allegations subject to verification. This would not be sufficient notice to predicate the applicability of section 10 of the Court of Claims Act.
After careful consideration of the facts and the case law, it is the court’s opinion that the claim accrued and ripened for purposes of filing a notice of intention or a claim for damages on November 5, 1976. This is the first date upon which the claimant could ascertain the extent of its damages. A claimant should not be required to file a claim unless and until it becomes evident that it has suffered injury due to the tort of an officer or employee of the State and damages so sustained are ascertainable. Under these circumstances, the claimant could not file a claim until the November 5, 1976 stipulation was entered into.
The defendant also moves to dismiss based on the affirmative defense of sovereign immunity. The defendant submits that the activities of the Secretary of State in his duties in connection with financing statements are governmental and that no liability arises from the public acts of the State when they are within the prerogative of the sovereign for which liability was not waived by section 8 of the Court of Claims Act.
The defendant argues that since the Secretary of State is an executive officer, his activities with regard to section 9 of the Uniform Commercial Code are public acts within his legal duties. As authority for the above propositions, the defendant cites Gross v State of New York (33 AD2d 868). The Gross case involved the acceptance of a certificate of incorporation by the Secretary of State for a particular corporate name and subse *1061 quently rejected it because the name was not available. The Third Department ordered the dismissal of the claim stating (p 869) inter alla that "[t]he State’s waiver of immunity and assumption of liability has never extended to redress individual wrongs which may have resulted from an error in the exercise of judgment by an officer of the State in the performance of his duty [citations omitted]”. However, that court did state (p 869) "[t]he decisive question here is whether or not the act of the employee in the Secretary of State’s office in checking the files of corporate names to ascertain whether a conflict existed between the name applied for by respondents and existing corporate names was a discretionary act or a ministerial act,” and held that the acceptance of the certificate was a discretionary act for which no wrong could be attributable. It is clear from a reading of Gross v State of New York (supra) that if a wrong complained of is a ministerial or nondiscretionary act, liability will ensue.
The defendant further contends that article 9 of the Uniform Commercial Code does not manifest an intent to protect a certain class of people. The court disagrees. The purpose of a notice-filing statute is to afford protection to a creditor by furnishing to those who intend to enter into a transaction with a debtor a starting point for investigation which will result in a fair warning concerning the contemplated dealing. Beneficial Fin. Co. of N. Y. v Kurland Cadillac-Oldsmobile (32 AD2d 643, 645). The statutory language pertaining to the obtaining of information from a filing officer, (Uniform Commercial Code, § 9-407) is mandatory, rather than discretionary. For example, subdivision (2) provides:
"Upon request of any person, the filing officer shall issue his certificate showing whether there is on file on the date and hour stated therein, any presently effective financing statement naming a particular debtor and any statement of assignment thereof and if there is, giving the date and hour of filing of each such statement and the names and addresses of each secured party therein.” (Emphasis supplied.)
It is clear then, that the Secretary of State in the case at bar was mandated to state whether there was on file any financing statement pertaining to the debtor.[1] Therefore, the notation on the certification that there was "no record” was not a discretionary act but rather an error committed in *1062 performance of a ministerial duty.[2] The defendant’s verified answer is a formal judicial admission of the error. There is no question of fact.
When the Department of Motor Vehicles issued a certificate of title without disclosing lienors, this court held in Exchange Nat. Bank of Tampa v State of New York (Claim No. 58122) and in Holtz Buick v State of New York (Claim No. 58275) (88 Misc 2d 444) that the negligence of its employees in failing to list lien information under the Uniform Vehicle Certificate of Title Act (Vehicle and Traffic Law, tit X, art 46) was actual negligence and awarded damages. There are many cases which stand for the proposition that when there is a duty to issue a certificate in a careful manner with knowledge that it would be relied on, negligent issuance will be actionable. (See Sexstone v City of Rochester, 32 AD2d 737, citing Glanzer v Shepard, 233 NY 236 and Ultramares Corp. v Touche, 255 NY 170.) Contrary to the defendant’s contention that article 9 of the Uniform Commercial Code did not manifest an intent to protect a certain class of people, the contrary is obviously correct. In fact, a copy of a statement certified by the Secretary of State pursuant to subdivision (1) of section 9-407 of the Uniform Commercial Code is prima facie evidence of the facts stated in the certification. (CPLR 4525.)
It is, therefore, the court’s opinion that there is no issue as to the negligence of the State; that it arose from a ministerial act in the performance of its employees’ duties and is actionable. (See Rosario v State of New York, 33 AD2d 122, 123; Waterman v State of New York, 19 AD2d 264, supra.)
In opposing the claimant’s motion for summary judgment, the defendant argues that there are issues of fact remaining to be determined. Defendant’s able attorney, in his affirmation, states that issues of fact exist which would operate to deny claimant’s motion pursuant to CPLR 3211 subd [d], "but it cannot state them because the State employees performing these functions at the time complained of are no longer in its employ and because other issues of fact are within claimant’s or third parties’ knowledge.”
The issues of fact apparently referred to are whether the claimant took certain steps to ascertain if other security interests existed and what, if any, information it received *1063 about Leasemore Equipment, Inc. before the purchase of the goods. In addition, the defendant raises sections 9-404 and 9-408 of the Uniform Commercial Code which provide for termination of financing statements and destruction of records. Defendant’s counsel argues that because of the procedures involved in keeping financial statements, the Secretary of State’s office is unable to check as to whether a termination statement was filed unless it has a date; that the termination information "could only be within the knowledge of Industralease or Leasemore or the former State employees.”
The court notes that in addition to the search in the office of the Secretary of State of New York, claimant’s predecessor (Airway Equipment Rental Company, Inc.) requested a similar search in the Office of the City Register of New York County. The City Register listed three security interests of record, but, did not list any perfected interest of Industralease Automated and Scientific Equipment Corp., (the plaintiff in the Queens County Supreme Court action).
. Therefore, while it may be that the Secretary of State was negligent, we cannot, on the papers before us ascertain what defenses, if any, may be available to the defendant and cannot order entry of summary judgment. (See Blossom v Barry, 1 Lans 190.)
The defendant is entitled to all discovery procedures set forth in the CPLR and the Court of Claims Act to ascertain information as to possible defenses, if any, which are not now available to it.
Upon the conclusion of pretrial discovery, the claimant may renew its motion for summary judgment.
The motion for summary judgment is denied with leave to renew upon the conclusion of pretrial discovery.

. See Public Officers Law, § 88, subd 6.

. cf. John Deere Co. of Baltimore v Pahl Constr. Co. 34 AD2d 85, 89, citing Matter of Brawn (6 UCC Rep 1031) with approval.