No. 59,276

Borg Warner Acceptance Corporation, *Plaintiff/Appellee,* v. The Secretary of State for the State of Kansas, *Defendant/Appellant,* and First National Bank of Hillsboro, Kansas, *Defendant/Appellee.*

(731 P.2d 301)

Opinion filed January 16, 1987.

*Leon J. Patton,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for defendant/appellant secretary of state.

*J. Robert Brookens,* of Morse, Batt & Brookens, of Marion, argued the cause and was on the brief for defendant/appellee First National Bank of Hillsboro.

*Steven J. Rupp,* of Curfman, Harris, Stallings & Snow, of Wichita, argued the cause and was on the brief for plaintiff/appellee Borg Warner Acceptance Corporation.

The opinion of the court was delivered by

Prager, J.: This is an action brought by Borg Warner Acceptance Corporation (Borg Warner) to recover damages from the Kansas Secretary of State for the negligence of his employees in failing to report the existence of a prior security interest in response to a request for a record search submitted by Borg Warner. The case was tried and submitted to the court on a stipulation of facts and testimony offered by the parties. The trial court entered judgment in favor of the plaintiff, and the defendant secretary of state appealed.

Inasmuch as this case involves alleged negligence on the part of employees of the secretary of state in the performance of statutory duties, it would be helpful at the outset to summarize the applicable statutory provisions. The Uniform Commercial Code governs the subject of secured transactions in K.S.A. 84-9-

101 *et seq*. Certain specific sections cover the subject of priority among secured creditors. K.S.A. 84-9-302 requires that a financing statement must be filed to perfect all security interests subject to certain exceptions not involved in this case. The requirements for a filing in order to perfect a security interest are set forth in K.S.A. 84-9-401 through K.S.A. 84-9-408. It is these sections which must be considered in determining the issues raised in the case now before us.

K.S.A. 84-9-401 established the place to file in order to perfect a security interest. Subsection (a) provided that the proper place to file a security interest when the collateral is equipment used in farming operations or farm products is the office of the register of deeds in the county where the land is located. Under subsection (b), when the collateral is timber or minerals, including oil and gas, or goods which are to become fixtures, the security interest must be filed in the office where a mortgage on the real estate would be filed. Subsection (c) provided that, in all other cases, the security interest must be filed in the office of the secretary of state.

K.S.A. 84-9-402 provided that a financing statement may be in a form prescribed by the secretary of state and shall give the names of the debtors and secured parties together with other listed information. The secretary of state is required to prescribe a form to comply with the statutory provisions.

K.S.A. 84-9-403(1) declared that the presentation for filing of a financing statement and tender of the filing fee to the filing officer constitutes a filing under this article. Subsection (4) requires the secretary of state, as a filing officer, to mark each statement with a filing number together with the date and hour of filing and to hold the financing statement for public inspection. In addition, the filing officer is required to index the statements "according to the names of the debtors" together with the addresses of the debtors, the date of filing, and the general description of collateral. This index is to be accessible to the public.

K.S.A. 84-9-407 covered the procedure by which information is to be obtained from a filing officer. Subsection (2) declares that upon written request of any person and tender of the proper fee, the filing officer shall issue such officer's certificate showing whether there is on file on the date and hour stated therein any

presently effective financing statement *naming a particular debtor* and giving the date and hour of filing of each statement and the names and addresses of each secured party. The fee to be charged for each search is set by statute.

Simply stated, it is the position of Borg Warner that it filed several written search requests with the secretary of state and paid the statutory fees, and that the employees of that office negligently failed to disclose information contained in the records of the office showing that a prior security interest involving another creditor had been filed in the office. As a result of the failure to disclose that information, Borg Warner maintains that it suffered financial loss through loss of its priority as a secured creditor.

The facts in this case are essentially undisputed and are contained in the stipulation of facts executed by the parties and in testimony offered by the parties. In 1977, the First National Bank of Hillsboro (Bank), a defendant-appellee, entered into a financing agreement with Paul Eugene Talley and Twila J. Talley, husband and wife (Talleys). The Talleys operated a business known as Empire Manufacturing Company engaged in the manufacture of lamps and the sale of furniture. The Talleys signed a note, security agreement, and a financing statement evidencing the transaction and listing their inventory as collateral for the loan. The financing statement was filed with the office of the secretary of state on December 1, 1977. The Bank listed the debtors on that financing statement under the names of Paul Eugene Talley and Twila J. Talley, and also under the misspelled trade name of Empira Manufacturing Co. instead of the proper name of Empire Manufacturing Co. Between December 1977 and July 1983, additional loans were made by the Bank to the Talleys.

In August of 1978, the plaintiff, Borg Warner, came on the scene. The Talleys entered into a loan or floor plan arrangement with a division of Borg Warner. On August 25, 1978, Borg Warner's Wichita office submitted a UCC search request to the office of the secretary of state, asking whether there were any presently effective financing statements naming the listed debtors: Empire Home Furnishings, Gene Talley, and Twila J. Talley. The office of secretary of state responded with a certificate which did not disclose the Bank's December 1, 1977, fi-

nancing statement of the Talleys and Empira Manufacturing Company, although that financing statement was on file and indexed in the office. Borg Warner assumed that it could loan money to the Talleys secured by a prior security interest. Borg Warner then loaned money to the Talleys. The money loaned at that time was later repaid and is not the subject matter of the controversy in this case.

Thereafter, Borg Warner continued to lend money to the Talleys. On March 7, 1980, an Illinois branch office of Borg Warner submitted three separate search requests to the secretary of state for Gene Talley, Twila Talley, and Empire Home Furnishings. The secretary of state returned the requests without listing the Bank's 1977 financing statement. Thereafter, Borg Warner entered into an open-end revolving credit arrangement with the Talleys. In July 1980, the Borg Warner commercial finance division office in Kansas City, Missouri, entered into another credit arrangement with the Talleys. On August 13, 1980, the Kansas City office of Borg Warner submitted a UCC search request to the Kansas Secretary of State's Office listing as debtors Gene Talley, Empire Manufacturing Co., and Empire Home Furnishings. Again the secretary's office failed to disclose the Bank's 1977 financing statement.

As additional security for that loan, Borg Warner took a $150,000 second mortgage on the Talleys' business real estate. This loan was not repaid and is the basis for Borg Warner's claim in this case.

Thereafter, Borg Warner continued to lend money to the Talleys. On June 23, 1983, Borg Warner submitted another search request listing as debtors Gene Talley, Twila J. Talley, and Empire Home Furnishings. Again the search request was returned to Borg Warner without listing the Bank's 1977 financing statement. In February of 1984, the Talleys filed a chapter 7 bankruptcy proceeding in Wichita. At that time the Talleys owed Borg Warner an outstanding balance of $327,000. On March 6, 1984, Borg Warner's bankruptcy attorney filed a UCC search request with the secretary of state listing as debtors Paul E. Talley, Twila J. Talley, Empire Manufacturing Company, Empire Lamp and Fixture, Empire Lamp and Shade, and Empire Home Furnishings. In response to that search request, the sec-

retary of state's certificate showed the December 1977 financing statement of the First National Bank of Hillsboro.

Thereafter, the Talleys' business inventory was liquidated, which resulted in proceeds of $70,622. By agreement between the Bank and Borg Warner, that amount was held in escrow pending the final determination of this controversy. On August 17, 1984, Borg Warner filed this action against the secretary of state and the First National Bank of Hillsboro seeking judgment against the secretary of state for the negligent UCC searches made by his filing officer and employees. In the alternative, Borg Warner requested that the court enter judgment that the First National Bank of Hillsboro had filed an erroneous and improper financing statement which precluded it from claiming a prior security interest in the Talleys' inventory.

The parties stipulated to most of the facts and the case was tried and submitted to the court. The action was brought under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, claiming negligence on the part of the filing officer and clerks of the secretary of state in failing to carry out his statutory duties under the Uniform Commercial Code. The trial court took the case under advisement and, in due course, filed its memorandum decision setting forth its findings of fact and conclusions of law. It found that the employees of the secretary of state were negligent in responding to Borg Warner's UCC search requests. The basis of this finding was that the debtor, Twila Talley, was listed on the August 1978, March 1980, and June 1983 requests which were returned without listing the Bank's 1977 financing statement. The trial court further found that the Bank's 1977 financing statement was not seriously misleading by the misspelling of the name Empire Manufacturing Company as Empira Manufacturing Company, because no search request looked solely for the trade name. The district court awarded Borg Warner damages in the amount of $70,622 from the secretary of state. The secretary of state appealed.

The first point raised on appeal is that the trial court's findings of fact are not supported by the evidence. It is well established that where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. The trial court's findings will not

be set aside unless clearly erroneous. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, 735-36, 697 P.2d 52 (1985).

When a verdict or judgment is attacked for insufficiency of the evidence, the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any substantial competent evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below. *Toumberlin v. Haas*, 236 Kan. 138, Syl. ¶ 5, 689 P.2d 808 (1984).

The secretary of state contends that its searches were consistent with the law and with their established course of dealing with Borg Warner. The statutory obligations of the office of secretary of state in conducting a UCC search are summarized at the beginning of this opinion. It is undisputed in this case that the Bank's 1977 financing statement listed as debtors the names of Paul Eugene Talley, Twila J. Talley, and Empira Manufacturing Company. In each of the searches requested by Borg Warner beginning in August of 1978 to the final search in March of 1984, the name of Twila Talley or Twila J. Talley appeared, with the exception of the August 13, 1980, search. In the stipulation of facts, Carol Beard, the filing officer in charge of UCC filings with the secretary of state, agreed that in looking for Twila Talley, she would have discovered Twila J. Talley, and would have discovered Empira Manufacturing Company, and would have found the Bank's 1977 financing statement. Likewise, Jon Josserand, assistant secretary of state, agreed that the 1977 financing statement listing Paul Eugene Talley and Twila J. Talley d/b/a Empira Manufacturing Co. would have been cross-indexed under the individual debtors, Paul Eugene Talley or Twila J. Talley. A search for the named Twila Talley or Twila J. Talley should have brought forth a report of the Bank's 1977 financing statement. We have no hesitancy in concluding that there was evidence to show the employees of the secretary of state were negligent in responding to Borg Warner's UCC search requests by failing to provide information as to the Bank's 1977 financing statement. We have, likewise, concluded from the evidence that Borg Warner had not limited the responses to its own search requests in order to save time and reporting fees.

The next point raised on the appeal is that the evidence was insufficient to support the trial court's finding that the negligence of the secretary of state was the proximate cause of Borg Warner's damages. One of the management employees of Borg Warner testified that all search requests for various offices of the company and the responses received thereto from the secretary of state's office were relevant, because each contained information as to who was doing business with the debtor at a particular time. He stated, without equivocation, that Borg Warner relied on all of those requests in advancing money to the Talleys. If we accept as true the evidence and all inferences to be drawn therefrom which tend to support the trial court's findings, there was substantial competent evidence to conclude that Borg Warner relied on all of the searches to some extent in deciding to lend money to the Talleys.

As his third point, the secretary of state complains that Borg Warner failed to prove the extent of damages which it suffered, because it only offered proof of the value of the inventory to which it lost its security. A question is raised as to whether Borg Warner's mortgage on the business real estate of the Talleys should be considered in determining its losses. Prior to trial, the parties agreed that the question of the real estate mortgage was to be treated separately from, and that it was not involved in, this lawsuit. At the time the case was heard, the principal and accrued interest owed by the Talleys to Borg Warner exceeded $300,000. It was undisputed that the only property of the Talleys available at the time of the bankruptcy to pay the debt to Borg Warner was the inventory and Borg Warner's mortgage on the Talleys' real property. Together, their value did not equal the amount due and owing from the Talleys to Borg Warner. We hold that the trial court properly awarded Borg Warner damages against the secretary of state in the amount of $70,622.

The final point raised on the appeal is that the trial court erred in concluding that the Kansas statute of limitations did not bar a recovery by Borg Warner in this case. The secretary of state contends that Borg Warner's claim was barred by the two-year statute of limitations under K.S.A. 60-513, because a Borg Warner employee, Doug Stevens, knew or should have known in 1980 that the Talleys had prior business dealings with the Bank. We have no hesitancy in holding that, under the law, Borg Warner

had a right to rely on the requested search requests and it was only in March of 1984 that the secretary of state first reported to Borg Warner that the Bank had the 1977 financing statement on file in its office. In this case, Borg Warner had a right to rely on the answers submitted by the secretary of state in response to its search requests. The statute of limitations did not begin to run until March of 1984, when the existence of the Bank's 1977 financing statement was discovered. This action was filed on August 17, 1984, well within the two-year statute of limitations provided for by K.S.A. 60-513. This same conclusion was reached by a New York court in a case involving very similar facts. See *Hudleasco, Inc. v. State,* 90 Misc. 2d 1057, 396 N.Y.S. 2d 1002 (1977). That decision was affirmed in *Hudleasco, Inc. v. State,* 63 App. Div. 2d 1042, 405 N.Y.S. 2d 784 (1978). In this regard, see also *J.I. Case Credit Corp. v. Foos,* 11 Kan. App. 2d 185, 189, 717 P.2d 1064 (1986), which held that K.S.A. 84-9-312 is a "pure race" type statute and the secured creditor who wins the "race" to the appropriate filing office has priority without regard to the prevailing creditor's state of mind regarding an imperfected security interest in the same equipment. We hold that the trial court did not err in concluding that the statute of limitations did not bar Borg Warner's claim.

For the reasons set forth above, the judgment of the district court is affirmed.

ALLEGRUCCI, J., not participating.