**In re WARDCORP, INC., Debtor.**

**TRANSAMERICA COMMERCIAL FINANCE CORPORATION,**
Plaintiff,

v.

**GENERAL ELECTRIC CAPITAL CORPORATION, et al.,**
Defendants.

**Bankruptcy No. IP88–6099–RWV–11.**
**Adv. No. 88–454.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Nov. 14, 1990.

James A. Knauer, Kroger, Gardis & Regas, Indianapolis, Ind., for Transamerica.

Eric C. Redman, Cohen & Malad, Indianapolis, Ind., for debtor.

ORDER GRANTING MOTION FOR DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING TRANSAMERICA COMMERCIAL FINANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the Motion for Partial Summary Judgment filed by the Debtor on March 3, 1989, and on the Motion for Summary Judgment filed by Transamerica Commercial Finance Corporation ("Transamerica") on March 1, 1990. The matters were heard on March 21, 1990. The Court now grants the Debtor's motion and denies Transamerica's motion on the following findings of fact and conclusions of law.

*Findings of Fact*

The issue in this case is whether a financing statement filed by Transamerica was sufficiently accurate to perfect its security interest in the Debtor's assets. The underlying facts are essentially undisputed.

On October 29, 1985, the Debtor entered into a security agreement with Transamerica, then known as Borg–Warner Acceptance Corporation, by which it gave Transamerica a security interest in its inventory, equipment, accounts receivable, contract rights and general intangibles. Transamerica filed a financing statement with the Secretary of State covering this collateral on November 19, 1985. The Debtor's name was listed as "Ward Corporation, Inc., DBA Wills Furniture and Appliances", and three addresses were given. The legal name of the Debtor is "Wardcorp, Inc." On February 17, 1988, Transamerica filed an amendment to its financing statement to correct the Debtor's name.

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code, and on December 13, 1988, Transamerica initiated this adversary proceeding by filing its Complaint to Determine Secured Status. Transamerica named as defendants the Debtor and other parties who may assert an interest in the collateral in which Transamerica claims a security interest.

The Debtor asserts that Transamerica's initial filing under "Ward Corporation, Inc., DBA Wills Furniture and Appliances" did not give subsequent creditors searching the files adequate notice of its security interest, and thus its security interest was unperfected (at least until the amendment of February 17, 1988, changing the Debtor's name to its correct legal name). Transamerica contends that its error in naming the Debtor was minor and not seriously misleading, and that its original financing statement perfected its security interest.

There has apparently been much confusion over the Debtor's name. The Debtor's name appears as Wardcorp, Inc., Ward Corporation, Inc., Ward Corp, Inc. on various financing statements. Some of the Debtor's checks have its correct name, but others bear the name Ward Corp, Inc., as does an insurance policy. A 1985 balance sheet names the Debtor as Ward Corporation. The Debtor's name is shown as Ward Corporation, Inc. at the beginning of its security agreement with Transamerica, but is handwritten as WARDCORP, INC. in the signature block.

UCC filings and searches in the Secretary of State's office are conducted by a staff of eight. There are about four million items on file, with about 300 new filings each day. The staff gets about 300 search requests a day. The financing statements are filed in an order similar to that of a phone book. Ward Corporation, Inc. would come before Wardcorp, Inc., with other names beginning with Ward and names beginning with Warda- and Wardb- between.

UCC searches under variations of the Debtor's name do not yield consistent results because the clerk in the Secretary of State's office has some discretion. A search for "Wardcorp, Inc.", properly executed by the clerk, will turn up all filings under that exact name, but will not necessarily disclose filings under Ward Corp, Inc. or Ward Corporation, Inc. The clerk may choose to note on the face of the

request form that there are such filings, but is not required to do so. If a search is conducted for "Wills Furniture and Appliances", the clerk may or may not note filings under "Wills Furniture and Appliance" or "Wills Furniture and Appliances, Inc." Addresses play no official part of a search, but a clerk may consult them in the exercise of his or her discretion. Some abbreviations are recognized, such as Corp. for Corporation and Inc. for Incorporated. But the only certainty is that a party will get filings under the exact name and spelling given, assuming no error by the clerk.

When there are multiple debtors or DBA's listed on a financing statement, the Secretary of State's office makes copies of the filing and files one under each of the names. Thus, a financing statement with the debtor shown as "Ward Corporation, Inc., DBA Wills Furniture and Appliances" would be filed under both names and would turn up in a search of either name. A party requesting a search may make a special request for name and spelling variations and cross references. The clerk will check all variations specifically given. If no specific variations are provided, the clerk would then search under reasonable variations of the name given, as determined by the clerk's discretion. A search request for Wardcorp, Inc. and unspecified variations may or may not turn up Ward Corporation, Inc. Not many search requests ask for name variations.

A party may conduct its own search of the files, with assistance from a clerk. About one party a day comes into the office to do such a search.

The Indiana Rules for Administration of the Uniform Commercial Code advise *"Because the debtor's name is the primary indexing tool, use of names other than the debtor's legal name may affect the validity of a filing and may create inconsistent files on the same debtor, lessening the accuracy of a future search.... [A] filing using a name other than the legal name may not be filed properly."* (emphasis in original) The booklet further advises that "[i]t is the secured party's responsibility to check the accuracy of the name prior to filing. *The accuracy of corporate names may be verified by contacting the Secretary of State's Corporate Division."* (emphasis in original)

Prior to Transamerica's filing of its amended financing statement, at least one other creditor, CIT Group/Sales Financing, Inc., now AT & T Credit Corporation ("AT & T"), searched the files under the name Wardcorp, Inc. (but not under Wills Furniture and Appliances), failed to find Transamerica's first financing statement, and extended financing to the Debtor, taking and perfecting a security interest in certain of its assets.

Transamerica concedes that it filed under the wrong name and that it had several documents in its files that showed the Debtor's correct name. But Transamerica argues that the names are so similar that the filing was not seriously misleading, and that a reasonably diligent searcher would have found the filing. It points to the fact the the Debtor signed the security agreement with the name "Ward Corporation, Inc.", apparently not noticing the difference in the names, and that when Debtor's counsel requested the Secretary of State to reserve the name "Ward Corporation, Inc.", the request was refused because the name was too similar to "Wardcorp, Inc." Moreover, out of about fifteen creditors, about ten, including Transamerica, filed under the Debtor's trade name, either alone or with some variation of its legal name. A reasonably diligent searcher should be expected to use more than just a debtor's exact legal name and spelling. AT & T's search request did not request name variations or filings under the Debtor's trade name. If AT & T and other creditors had requested name and spelling variations, it may have found Transamerica's first filing, and if they had searched under Wills Furniture and Appliances, it would have found the first filing. Transamerica therefore argues that a creditor's search is not reasonable unless it takes advantage of the flexibility allowed by the Secretary of State's office, and that since a reasonably diligent searcher would have found Transamerica's first filing, its filing was not seriously mis-

leading and was adequate to perfect its security interest.

### Conclusions of Law

This Court has jurisdiction over this matter. 28 U.S.C. section 157(b)(2)(K).

The validity and priority of the liens at issue are determined by Indiana law, and this Court must determine whether an Indiana court would find Transamerica's first filing sufficient to perfect its security interest in the Debtor's assets.

In setting forth the formal requirements of financing statements, the Indiana version of the Uniform Commercial Code provides:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names of partners. . . .

A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

Ind.Code 26–1–9–402(7) and (8). The official comment to this section of the model UCC states that "[t]rade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system. However, provision is made in Section 9–403(5) for indexing in a trade name if the secured party so desires." Section 9–403(5) of the model UCC does not appear in Indiana's version, but indexing under trade names is allowed by rule. *See* Indiana Rules for the Administration of the Uniform Commercial Code, Section I, Part L.

■ Interpretation of this section of the UCC is anything but uniform, and courts have differed widely on the sufficiency of filing under a debtor's trade name or a variation of a debtor's legal name. *See Sufficiency of Designation of Debtor or Secured Party in Security Agreement or Financing Statement under UCC Section 9–402*, 99 ALR3d 478. The rule seems to be that an error in the debtor's name is seriously misleading if it would prevent the reasonably diligent searcher from discovering the financing statement. There are variances, however, in what is expected of a reasonably diligent searcher.

In this case, the issue of sufficiency is actually two sub-issues. First, whether "Ward Corporation, Inc." is similar enough to "Wardcorp, Inc." that a filing under the former is sufficient to put a reasonably diligent searcher on notice of Transamerica's security interest. If so, the inquiry ends. If not, that designation is of no effect, and might as well have been omitted. The question then is whether filing under the Debtor's trade name alone would be sufficient to perfect the security interest.

The leading case in Indiana on errors in a debtor's legal name is *Citizens National Bank v. Wedel*, 489 N.E.2d 1203 (Ind.App. 1986), in which a bank's financing statement showing the debtor as "Post, Inc." rather than its legal name, "The Post, Inc.", was held sufficient. The court held that the question of whether an error in the debtor's name is a minor one and not seriously misleading is *one of law, not of fact*, and, somewhat incongruously, that the test of sufficiency of a financing statement is whether, *under all the facts*, the filing would have given a file searcher notice to justify placing a duty upon him to make further inquiry concerning the possible security interest. *Id.* at 1206. This point of potential confusion will be discussed later.

The evidence was that after the bank filed its financing statement, another creditor, Wedel, conducted a search under "The Post, Inc." and the Secretary of State's office reported no filings under this name. *Id.* at 1204, 1206. The court surely would not have found the filing to be sufficient if a properly framed and executed search would not detect it. However, the Court did not explicitly state whether Wedel's failure to find the bank's financing statement was because Wedel had framed the search too narrowly or because the clerk improperly executed the search.

There was a conflict in the evidence on whether the Secretary of State's office omitted initial articles, such as "the", in filing and conducting searches, which the court found unnecessary to resolve. *Id.* at 1206 n. 6. The court, however, judicially noted that initial articles are commonly omitted when titles are organized alphabetically, and was aware of, and could fathom, no system which would organize titles by initial article. *Id.* at 1207. It then stated:

Thus, a filing that omits the initial article of a corporation name fulfils the test of a minor error which is not seriously misleading because such a filing should alert searches [sic] to the existence of a security agreement. In other words, it provided sufficient notice to warrant imposing an obligation upon him to inquire further concerning possible security interests.

*Id.* This might mean that Wedel should have conducted searches with and without the initial article, and locating a filing under "Post, Inc." would have imposed a duty to inquire whether this was that same entity as "The Post, Inc." However, this Court concludes that the *Wedel* court believed that the clerk should have found the financing statement in conducting the search as framed by Wedel, since it seemed to believe that disregarding initial articles would be the only proper way to file and search (regardless of whether this was in fact the system used), and stated that the proper remedy for a creditor when a code filing officer overlooks a filed financing statement in responding to a property framed search request is against the officer. *Id.*

Thus, the court concluded that omission of the initial article from the debtor's name did not invalidate the financing statement, giving effect to the underlying policy of the section excusing minor errors to "simplify formal requisites and filing requirements and ... to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." *Id.* at 1207, *quoting* West's AIC 26–1–9–402 (1980), comment 5.

To illustrate the bounds of minor errors, the *Wedel* court cited several cases finding other name variations to be minor. In *Excel Stores, Inc.,* 341 F.2d 961 (2d Cir.1965), the debtor was shown as Excel Department Stores rather than Excel Stores, Inc. In *In re Southern Supply Co.,* 405 F.Supp. 20 (E.D.N.C.1975), the debtor was shown as Southern Supply Co. rather than Southern Supply Company of Greenville, N.C., Inc. In *In re Nara Non Food Distributing, Inc.,* 66 Misc.2d 779, 322 N.Y.S.2d 194 (1970), *aff'd,* 36 App.Div.2d 796, 320 N.Y.S.2d 1014 (1971), the debtor was shown as Nara Dist. Inc. instead of Nara Non Food Distributing Inc. In *Sales Finance Corp. v. McDermott Appliance Co.,* 340 Mass. 493, 165 N.E.2d 119 (1960), the debtor was shown as McDermott Appliance Co., Inc. rather than McDermott Appliance Company, Inc.

Under the Secretary of State's current rules (which may be different from those in place at the time of the search in *Wedel*), a search under those debtors' legal names alone would reliably turn up financing statements under the name variations in only the last of the four cited cases, "Co." being a generally recognized abbreviation for "Company" in the context in which it appears. In the other three cases, whether the existence of the financing statements filed under the name variations would be noted in a search under the legal name, or would turn up in a search with a special request for unspecified name variations, would be left to the discretion of the clerk conducting the search.

This Court has an advantage that the *Wedel* court did not—nonconflicting evidence of the manner in which financing statements are filed and searches are conducted by the Secretary of State. If the *Wedel* court had had the evidence before it that this Court has, it probably would have reached the same outcome, but it may have chosen different examples of other errors found to be minor. In *Southern Supply,* the evidence was that a search under the debtor's legal name had disclosed the filing under the variant name. *See* 405 F.Supp. at 22–23. In *Nara Non* and *Excel,* the courts assumed a subsequent searcher

would have found the filings under the erroneous names. *See* 322 N.Y.S.2d at 195 and 341 F.2d at 963. The *Wedel* court based its holding on the belief that the search under the debtor's correct legal name should have produced the bank's financing statement and that the Secretary of State's office erred in failing to produce it. The Court does not believe that the *Wedel* court would have found an error in a debtor's legal name to be minor and not seriously misleading if a properly conducted search under the debtor's correct legal name would not have revealed the financing statement.

 The section excusing minor errors applies to all the contents of a financing statement, not just to the debtor's name. *See* Ind.Code 26–1–9–402(1) and (8). It makes sense not to invalidate a financing statement if there is some small error, for instance, in the debtor's address or the secured party's name. A searcher finding such a financing statement is put on notice of a possible security interest and should have the duty of further inquiry. However, there can be less tolerance of errors in a debtor's name, since such errors may prevent a searcher from discovering the financing statement. If a searcher cannot find it, the searcher cannot be burdened with the duty of further inquiry. The Secretary of State's rules caution creditors that the debtor's name is the primary indexing tool and inaccuracies may compromise the validity of a filing, and direct creditors to a means of verifying corporate names. Any rule that would burden a searcher with guessing misspellings and misconfigurations of a legal name or that would make a searcher dependent on the discretion of the clerk conducting the search would not provide creditors with the certainty that is essential in these commercial transactions. Thus, the Court believes that under Indiana law, an error in a debtor's legal name is minor and not seriously misleading only if a properly executed search of the correct legal name by the Secretary of State's office would disclose the filing without depending on the discretion of the clerk conducting the search. *See In re Tyler,* 23 B.R. 806, 809–10

(Bankr.S.D.Fla.1982) (where searching system would not produce filing under "Tri–State Moulded Plastics, Inc." in search for correct name of "Tri–State Molded Plastics, Inc.", inaccuracy was seriously misleading).

██ In this case, a search under the Debtor's correct legal name, Wardcorp, Inc., even with a special request for unspecified name variations, would not have reliably produced Transamerica's first filing under Ward Corporation, Inc. It would have been up to the discretion of the clerk finding the filing to note or produce it. Moreover, since it is not in close proximity to filings under the correct legal name, being separated from them by other filings under Ward and filings beginning with Warda- and Wardb-, the clerk may not have even run across it in searching under the correct legal name. Even if *Wedel* can be read as requiring a creditor to make special requests for searches under minor name variations (with and without the initial article in that case), a creditor in this case, dealing with Wardcorp, Inc., could not have been expected to specifically request a search under a name as different as Ward Corporation, Inc. The Court concludes that, even under a broad reading of *Wedel*, Transamerica's filing under Ward Corporation, Inc. was not a minor error, but was seriously misleading, and thus ineffective to perfect its security interest.

██ Transamerica may yet prevail, however, if its filing under the Debtor's trade name was sufficient to perfect its security interest. The uncontradicted evidence was that the trade name was correctly listed, that the financing statement was correctly filed under the trade name, and that a search under the trade name would have disclosed Transamerica's security interest, without depending on the discretion of the clerk conducting the search. The issue is whether searching under the trade name as well as the legal name is part of a reasonably diligent searcher' burden.

There appears to be no Indiana authority on this issue, and cases from other jurisdictions are conflicting. In *In re Glasco, Inc.,* 642 F.2d 793 (5th Cir.1981), the court, over

dissent, found filing under a debtor's trade name alone sufficient to perfect a security interest. The court held that under Florida law, each case must be judged by its own facts, and that in this case, where the debtor conducted all its business under "Elite Boats, Division of Glasco, Inc.", any reasonably prudent creditor would have requested the Secretary of State to search under both "Elite Boats" and "Glasco, Inc." *Id.* at 796. This case was followed in *Willson v. Habersham Bank*, 111 B.R. 368 (N.D.Ga.1990), with the court holding that under Georgia law, a filing under the debtor's trade name of "Cornelia Car City" rather than its legal name of "Simpson Motor Company" was sufficient, where the debtor did business under only its trade name.

On the other hand, in *Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531 (10th Cir.1987), the court held that under Kansas law, filing under a trade name rather than an undisclosed partnership name was insufficient to perfect a security interest. Citing numerous cases rejecting the use of trade names which vary significantly from a debtor's legal name, *id.* at 1535 n. 8, and rejecting *Glasco, id.* at 1535, the court found that clarity and certainty in lien perfection requirements would be lost if equitable exceptions are created to permit filing under trade names in some cases. *Id.* at 1536. Creditors then would have the burden of always searching under any and all trade names a debtor may have used, since they would not know how a court may balance the equities in some future litigation. *Id.* In *In re Swati, Inc.*, 54 B.R. 498, 500 (Bankr.N.D.Ill.1985), the court found that filing under the trade name of "King's Plaza Hotel" rather than the legal name of "Swati, Inc." was insufficient. The court reasoned that approving filing under names other than a debtor's legal name would frustrate the UCC policy of certainty in commercial lending activities. *Id.* at 503. Putting the extra burden of searching under trade names on subsequent creditors is contrary to the implied policy of the UCC that those seeking to perfect a security interest bear the burden of proper filing. *Id.*

Cases holding filings under trade names alone to be insufficient appear to be in the majority, but the question is which line of reasoning represents Indiana law. *Wedel* held that the test of sufficiency of a financing statement is whether, under all the facts, the filing would have given a file searcher notice to justify placing a duty upon him to make further inquiry concerning the possible security interest. 489 N.E.2d at 1206. Out of its full context this might offer some support for the minority position, if this is interpreted to mean that a court must consider such facts as how well known a debtor's trade name was and how much business was conducted under a debtor's various names in determining whether a subsequent creditor should have searched under more than just the legal name.

However, the *Wedel* court believed that a properly executed search under the debtor's legal name "The Post, Inc." would turn up a financing statement filed under "Post, Inc." Those two names are so similar that a subsequent creditor finding the filing at issue should bear the burden of further inquiry into the possibility of a prior security interest. Moreover, a second issue in *Wedel* was whether the financing statement adequately described the bank's collateral. The *Wedel* court found that the description of collateral as "new boats—all types of trailers, new jet boats" was sufficient to direct further inquiry into whether a boat that was arguably used was encumbered. *See* 489 N.E.2d at 1208. The court's instruction to consider all the facts seems primarily aimed at this second issue.

■ This Court believes the better interpretation of *Wedel* is that a court must consider all the surrounding facts in determining whether a financing statement, once located through a properly conducted search under a debtor's legal name, would put the searcher on notice of a possible security interest, despite errors in the debtor's name or address, errors in identifying the secured party, errors in describing the collateral, and the like. The Court believes Indiana would follow the majority of jurisdictions in findings that placing on the fil-

ing creditor the burden of ascertaining and filing under a debtor's legal name is necessary to effectuate the UCC's policy of certainty and simplicity in these commercial transactions. Such a requirement makes the process of perfection more certain, since it does not depend on a *post hoc* balancing of equities, and its makes searching the records more simple, since a subsequent creditor can determine with confidence the status of would-be collateral by one search under one unique name.

Of course, creditors may want to file and search under trade names as well as legal names for any number of reasons, including avoidance of this type of litigation, and Indiana law accommodates such desires. But filing under just a debtor's legal name is sufficient to perfect a security interest, Ind.Code 26–1–9–402(7), and searching under the legal name should sufficiently disclose it.

A movant is entitled to summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Bankruptcy Rule 7056. There is no genuine issue of material fact and the law is with the Debtor and against Transamerica on the issue of whether Transamerica's first filing statement was sufficient to perfect its security interest. Summary judgment is therefore appropriate on this issue. However, since there is insufficient uncontested evidence before the Court for a determination of the extent and priorities of all the asserted liens in the assets at issue, summary judgment will be limited to this narrow issue.

The Court therefore DENIES Transamerica's Motion for Summary Judgment and GRANTS the Debtor's Motion for Partial Summary Judgment. Partial summary judgment will be entered separately.

SO ORDERED.