ARENA AUTO AUCTION, INC., Plaintiff-Appellant, v. MECUM'S COUN-
TRYSIDE MOTOR COMPANY, INC., *et al.*, Defendants (Amcore Bank
N.A., Rockford, Defendant-Appellee).

Second District   No. 2—92—0514

Opinion filed September 23, 1993.

Robert K. Slattery, of Freeport, and Gary Hollander, of Bixby, Lechner
& Potratz, P.C., of Chicago, for appellant.

Craig A. Wilette, of Ritz, Shair & Wilette, and Pamela S. Fox, of Mag-
gio & Fox, P.C., both of Rockford, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Arena Auto Auction, Inc. (Arena), appeals from an order in which the trial court held that defendant Amcore Bank's (Amcore's) security interest in certain automobiles was superior to Arena's, and, therefore, Amcore was entitled to approximately $126,197.76 held in escrow. On appeal, Arena raises two arguments: (1) whether Amcore's security interest attached to the subject vehicles and (2) whether Arena properly filed its financing statement.

Arena is a corporation which conducts the sale of motor vehicles at auctions. Its principal place of business is in Bolingbrook, Illinois. Defendant Amcore is a national banking association located in Rockford, Illinois. Defendant Mecum's Countryside Motor Company, Inc. (Mecum's), which is not a party in this appeal, is a corporation which operates used car lots in Loves Park, Illinois, and Roscoe, Illinois. Defendants Edward L. Mecum, Sr., Edward L. Mecum, Jr., and Dana Mecum, who are also not parties in this appeal, are officers of Mecum's.

On January 12, 1989, Mecum's executed a loan agreement and promissory note in the face amount of $750,000 in favor of Amcore. Mecum's also executed a security agreement and financing statement in favor of Amcore to secure the promissory note in the amount of $750,000, which pledged Mecum's vehicle inventory as security for the debt. Amcore properly perfected its security interest in the vehicle inventory on January 20, 1989, by filing with the Illinois Secretary of State's office financing statement No. 2525170, which covered Mecum's vehicle inventory.

On March 22, 1989, Mecum's provided a dealer information sheet to Arena in order to trade vehicles at the latter's auction. The corporate name of Mecum's was incorrectly listed on the dealer information sheet as "Mecum's Countryside Motor, Inc.," rather than in its correct corporate name of "Mecum's Countryside Motor Company, Inc."

On the same date, Mecum's executed a dealer registration agreement (Agreement) with Arena under the name of "Mecum's Countryside Motor." Dealers were required to sign the Agreement before they could trade vehicles at the Arena auction. The Agreement sets forth the terms and conditions under which dealers were to obtain motor vehicles through the Arena auction. Paragraph 8(d) provides that both the title and ownership of vehicles which Mecum's obtained through the auction would remain in the seller of the vehicles until payment in full had been made.

Thereafter, Mecum's began to acquire vehicles through Arena pursuant to the terms and conditions of the Agreement. In January 1991, Arena and Mecum's were contemplating an increase in the latter's line of credit. At that time, Arena presented two requests for information (Uniform Commercial Code form 11.7) to the Secretary of State's office. One of the requests involved Edward L. Mecum, Sr. The other request listed the name "Mecum's Countryside Motor, Inc.," the above-cited corporate name provided in the dealer information sheet. The Secretary of State's office advised Arena that as of December 7, 1990, there were no prior security interests recorded against Mecum's.

On January 15, 1991, Mecum's executed a security agreement and financing statement in favor of Arena, which pledged the motor vehicles obtained from Arena as security for its debt. Arena recorded its financing statement on January 28, 1991, with the Secretary of State's office. On or about October 1, 1991, Mecum's acquired 93 vehicles from Arena without making any payment towards the vehicles. As of December 13, 1991, Mecum's had sold 53 of these vehicles to the public.

On December 12, 1991, Arena filed a complaint for injunction, imposition of trust and other relief against Mecum's, Edward L. Mecum, Sr., Edward L. Mecum, Jr., and Dana E. Mecum. On that same date, Arena also obtained a temporary restraining order prohibiting Mecum's from selling the remaining vehicles purchased from Arena.

By agreement, Amcore was added as a defendant on December 20, 1991. As part of its answer to the amended complaint for injunction, imposition of trust and other relief, Amcore filed a counterclaim against Arena stating that it had a valid prior and senior perfected lien in Mecum's vehicle inventory. Also, by agreement, the court entered an order providing that the remaining Mecum's vehicles be sold and the proceeds placed in escrow at Amcore. The amount realized from the sale of the remaining inventory was $126,197.76.

On February 21, 1992, the trial court held a hearing to determine whether Amcore or Arena was entitled to the proceeds held in escrow. In a hearing held on March 23, 1993, the trial court stated its decision thusly:

"Getting to the crux of it, the Arena Auction—Auto Auction never gave notice to the bank pursuant to 9—312 and especially 9—312(e) Uniform Commercial Code their claimed lien on the property and they never—they didn't file a proper security document either. But primarily they didn't notify the bank within the twenty days of preferred time that they could have.

What it comes down to then deciding the lien rights between the two parties, the Court finds that the bank has a valid prior and senior lien to the Auction. And therefore the $125,000 [*sic*] in escrow belongs to the bank."

The trial court's finding was reflected in an order entered on April 1, 1992. This timely appeal followed.

■ Arena first argues that Mecum's did not hold a sufficient interest in the Arena vehicles for Amcore's security interest to attach to same. Specifically, Arena maintains that Arena and Mecum's did not intend that Mecum's would acquire ownership of Arena's vehicles until payment had been made and that Arena retained titles to all of the Arena vehicles.

In response, Amcore contends that Arena's title retention is immaterial for purposes of determining ownership or rights in vehicle inventory. We agree. A security interest in a motor vehicle is ordinarily perfected according to the provisions of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 1—100 *et seq.*). Section 3—201 of the Vehicle Code contains specific exception for security interests in vehicle inventory of the type involved in the instant case. (See, *e.g., Central National Bank v. Worden-Martin, Inc.* (1980), 90 Ill. App. 3d 601, 602.) Section 3—201 of the Vehicle Code provides:

"Excepted liens and security interests. This Article does not apply to or affect:

\* \* \*

(c) A security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale, but a buyer in the ordinary course of trade from the manufacturer or dealer takes free of the security interest." Ill. Rev. Stat. 1989, ch. 95½, par. 3—201(c).

In the Uniform Commercial Code (Code), a "[s]ecurity interest" is defined as:

"[A]n interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods \* \* \* is limited in effect to a reservation of a 'security interest'." (Ill. Rev. Stat. 1989, ch. 26, par. 1—201(37).)

Furthermore, section 9—202 of the Code provides:

"Title to Collateral Immaterial. Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." (Ill. Rev. Stat. 1989, ch. 26, par. 9—202.)

Again, in section 2—401(1), the Code specifically states that "[a]ny retention or reservation by the seller of the title \*\*\* in goods \*\*\* is limited in effect to a reservation of a security interest." Ill. Rev. Stat. 1989, ch. 26, par. 2—401(1).

Given this statutory language, there is little doubt that Arena's retention of title to the subject vehicles has no effect upon determining which party could claim the funds held in escrow. In so finding, we have considered the authority cited by Arena and have determined that it is irrelevant to this issue.

As a subargument of this initial argument, Arena maintains that, because Amcore was not engaged in dealer-floor-plan financing, it would have had to perfect its interest in accordance with the Vehicle Code. Arena then contends that because Amcore did not do this it did not have any security interest in the subject vehicles.

As Amcore points out, there is no language in the relevant statutes which limits the exemptions from the Vehicle Code's provisions to situations involving dealer floor financing. Indeed, Arena has cited no case law in support of its argument. We find no reason to follow Arena's very narrow reading of when the exemption from the Vehicle Code is permitted.

■ Finally, Arena contends that it substantially complied with the Code's filing requirements. Amcore argues that Arena failed to follow the necessary steps required by the Code and, consequently, Arena's security interest in the subject funds is secondary to Amcore's.

Pursuant to section 9—309 of the Code (Ill. Rev. Stat. 1989, ch. 26, par. 9—309), Amcore perfected its security interest in Mecum's vehicle inventory by filing a financing statement with the Illinois Secretary of State's office on January 20, 1989. Thus, we find that Amcore complied with the relevant Code requirements.

Arena filed its financing statement on January 28, 1991, fully two years after Amcore's filing. Under these circumstances, the only way Arena's security interest could have achieved priority over Amcore's would have been for Arena to perfect a purchase money security interest pursuant to section 9—312(3) of the Code. This section provides:

> "A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds on or before the delivery of the inventory to a buyer \*\*\*." (Ill. Rev. Stat. 1989, ch. 26, par. 9—312(3).)

To take advantage of this provision, Arena was required to give Amcore written notice of its filing within 21 days as required by section

9—312(3). (Ill. Rev. Stat. 1989, ch. 26, par. 9—312(3).) Arena failed to provide Amcore with the requisite notice.

Arena implies that its failure to provide such notice was due to Mecum's not putting its proper corporate name on the dealer information sheet. Without Mecum's actual corporate name, Arena was unable to determine Amcore's security interest in the subject vehicles. This attempt to explain Arena's failure to give requisite notice is undercut by a letter in the record from Arena's treasurer, James Buzzell, to Edward Mecum dated December 21, 1990, more than one month before Arena filed its financing statement. The letter is addressed to "MECUM'S COUNTRYSIDE MOTOR COMPANY, INC.," which is Mecum's corporate name. Obviously, Arena was aware of Mecum's actual corporate name, prior to its submission of requests for information to the Secretary of State's office in January 1991. Its failure to turn up Amcore's security interest in the subject vehicles was the result of a lax investigation, not misinformation.

Section 9—312(5)(a) of the Code provides that, when a purchase money security interest is not properly perfected, as in the case here, conflicting security interests in the same inventory are ranked in priority according to the time of filing or perfection. (Ill. Rev. Stat. 1989, ch. 26, par. 9—312(5)(a).) Having perfected its security interest on January 20, 1989, more than two years before Arena's January 28, 1991, filing, Amcore has priority to the subject funds. Accordingly, the trial court properly determined that Amcore's security interest was superior to Arena's. Its award of the funds in escrow to Amcore was correct.

For reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

UNVERZAGT and QUETSCH, JJ., concur.