OPINION OF THE COURT
James P. King, J.
This action seeks recovery for damages alleged to have arisen when New York State Division of Human Rights (DHR) failed to resolve claimant’s employment discrimination claim in a timely manner.
On December 22, 1982, shortly after being fired by his employer, Pepsi Cola Bottling Group (Pepsico), claimant filed a complaint with DHR charging Pepsico with discrimination on the basis of national origin and retaliation (Executive Law §§ 296, 297). Two years later, in December 1984, DHR found probable cause to believe claimant’s charges.
After three more years, DHR scheduled a prehearing conference for April 28, 1988 but, according to claimant, neither party was given notification. The conference was rescheduled and then once again adjourned. Almost seven years after the charges were filed, in August 1989, there was an administrative hearing, and in February 1990, a proposed decision on the discrimination complaint was issued by the Administrative Law Judge.
In 1991, Pepsico brought a CPLR article 78 proceeding to dismiss the DHR complaint because of undue delay and was successful in Supreme Court. The Second Department, while *4 finding the delay "inexcusable” and "deplorable”, held that Pepsico failed to prove that it suffered substantial prejudice (Matter of Pepsico, Inc. v Rosa, 204 AD2d 552, 554), and claimant’s DHR proceeding was reinstated. However, there was another year of delay before an alternative decision was issued by the DHR Order Preparation Unit in 1992, and the Commissioner’s final decision and order was not entered until March 12, 1993.
In that decision, Pepsico was found to have violated provisions of the Human Rights Law by retaliating against claimant for expressing opposition to what he perceived to be discriminatory company employment practices. DHR awarded claimant $115,245.50 in back pay, with 9% interest to run from July 1, 1985, and $25,000 in compensatory damages for mental anguish (Ferrer v Pepsi Cola Bottling Group, DHR Dec, Mar. 12, 1993).
In all, more than 10 years had elapsed between December 1982, when Mr. Ferrer filed his complaint against Pepsico, and March 1993, when DHR issued a final decision on the claim. Throughout this process, Pepsico had raised objections and sought dismissal of the claim on the grounds of prejudicial delay. Appealing DHR’s decision in favor of claimant, Pepsico renewed this argument.
This time the Second Department, hearing the appeal on transfer from Supreme Court, agreed with Pepsico. In its March 20, 1995 decision, which annulled DHR’s determination and dismissed claimant’s complaint, the Court found "substantial prejudice” to Pepsico "due to this excessive delay” (Matter of Pepsico, Inc. v Rosa, 213 AD2d 550, 551, citing Matter of Corning Glass Works v Ovsanik, 84 NY2d 619). The Court specifically attributed the delay to DHR, noted that "no explanation * * * was provided”, and referred to the unavailability of witnesses and lost documentary evidence.[2] (Matter of Pepsico, Inc. v Rosa, supra.)
Claimant and DHR appealed as of right to the Court of Appeals and also sought leave to appeal. On September 26, 1995, the Court of Appeals dismissed the appeal and denied the motion for leave to appeal. Subsequently, on December 18, 1995, claimant filed this claim against New York State and DHR based on 42 USC § 1983 and alleging that the delayed process *5 ing of his discrimination complaint violated his due process and equal protection rights under the Federal and State Constitutions.
Defendant now seeks summary judgment dismissing the claim on the grounds of untimeliness, lack of subject matter jurisdiction, and sovereign immunity. Claimant opposes defendant’s motion and cross-moves for permission to amend his claim by adding a negligence cause of action and, if necessary, for permission to file a late claim.
Jurisdiction
It is well established that no cause of action lies against the State of New York for alleged violations of an individual’s rights secured by the United States Constitution (Matter of Thomas v New York Temporary State Commn. on Regulation of Lobbying, 83 AD2d 723, affd 56 NY2d 656). Further, because the State is not a "person” amenable to suit under 42 USC § 1983 (Will v Michigan Dept. of State Police, 491 US 58), "the law is unequivocal that this section does not give rise to a cognizable claim against the State or a department thereof’ (Davis v State of New York, 124 AD2d 420, 423). Thus, this court lacks the jurisdiction to hear claimant’s Federal constitutional due process and equal protection claims, and, accordingly, they must be dismissed.[3]
Less sharply defined, however, is the ability of the Court of Claims to hear actions based on alleged violations of State constitutional provisions. Few decisions have directly addressed the question of whether there exists a private right of action enabling claimants to pursue such claims in this court. One that does is Brown v State of New York (Ct Cl, Mar. 30, 1994, Hanifin, J., claim No. 86979, motion No. M-48150, affd 221 AD2d 681, lv granted 87 NY2d 809).[4] In Brown, Judge Hanifin held, after thorough analysis, that the Court of Claims lacks jurisdiction to entertain claims against the State for damages based upon violations of the State Constitution’s equal protection and search and seizure provisions. "There is no direct constitutional tort remedy available with regard to New York State Constitution Article I, § 11” or section 12 (Ct Cl, Mar. *6 30, 1994, slip op, at 26-27, supra). He concluded that unless a civil remedy was provided by the State Legislature, actions for money damages based on alleged violations of these provisions are not justiciable in the Court of Claims (Ct Cl, Mar. 30, 1994, slip op, at 26, supra).
The United States Supreme Court itself has spoken, albeit in a Federal context, on the issue of when a private right of action exists for redress of alleged constitutional violations. The high Court held that a direct action for damages under the Constitution "can be maintained only where no other 'equally effective or adequate’ remedy exists” (Lombard v Board of Educ., 784 F Supp 1029, 1034, quoting Carlson v Green, 446 US 14,18-19; see also, Bivens v Six Unknown Fed. Narcotics Agents, 403 US 388). Where Congress has supplied a statutory mechanism by which the (constitutional) right in question could be vindicated, such as 42 USC § 1983, the statute must be the basis of any related cause of action for damages.
With respect to rights secured by a State Constitution, "[several jurisdictions have followed the approach used by the United States Supreme Court in the Bivens line of cases, and have based their decisions [regarding implied private rights of action] on the presence or absence of alternative remedial schemes” (City of Beaumont v Bouillion, 896 SW2d 143, 147 [Tex], and cases cited therein; see also, Lombard v Board of Educ., 784 F Supp 1029, supra). Given that New York State provides no general statutory vehicle similar to 42 USC § 1983 for redress of State constitutional violations, the question before this court is whether a direct, private right of action exists under the Due Process and Equal Protection Clauses of the New York State Constitution.
Recently, the Supreme Court of Vermont outlined a two-part test for determining whether direct actions for money damages based on violations of State constitutional rights are ever available (Shields v Gerhart, 163 Vt 219, 658 A2d 924). "First, we must determine whether the constitutional provisions are self-executing, that is, whether they support an action against the state or its agents without implementing legislation. Second, if we find a provision is self-executing, we must determine whether monetary damages are available as a remedy for a violation” (supra, 163 Vt, at 222, 658 A2d, at 927).
The Vermont court considered a number of criteria in determining whether to categorize two constitutional provi *7 sions as self-executing.[5] It ultimately concluded that a private right of action for money damages may be implied "where the Legislature has fashioned no other adequate remedial scheme” (Shields v Gerhart, supra, 163 Vt, at 234, 658 A2d, at 934). Unless and until a different test is adopted by New York’s high Court (see, n 4), this appears to be a reasonable standard to apply.
In the matter at hand, claimant has properly asserted his Federal due process and equal protection claims via 42 USC § 1983 in United States District Court (see, n 3), and he could also have brought the section 1983 action in State Supreme Court. While a section 1983 action addresses Federal, rather than State, constitutional violations, claimant does not maintain that the equal protection and due process rights protected by the Federal Constitution are in any way different from those protected by the State Constitution. In fact, a New York court has explicitly held that, at least in relation to the Equal Protection Clause, the State provision is " 'no broader in coverage than the Federal provision’ ” (Holtzman v Supreme Ct., 139 Misc 2d 109, 121). Thus, 42 USC § 1983 is one statute that provides claimant with an appropriate vehicle for pursuing his due process and equal protection claims. In addition, because the Legislature has waived the State’s sovereign immunity, the injury claimant has suffered here — loss of the favorable judgment because of administrative delay and inaction — can also be redressed by way of a common-law negligence claim (see, discussion below). Since both statutory and common-law bases for redress are available, no private right of action can exist. Thus, claimant’s State due process and equal protection claims must also be dismissed.
Motion to Amend Claim
Claimant’s motion to amend his claim to add a negligence cause of action must be denied because a jurisdictional defect may not be remedied by amendment of the original claim (Grande v State of New York, 160 Misc 2d 383). "Resolution of claimant’s motion to amend the claim depends upon the sufficiency of the original pleading * * * [and claimant] cannot *8 amend the claim as of right or with permission, so as to cure the jurisdictional defect” (supra, at 385). Because the original claim has been dismissed for want of jurisdiction it may not be amended.
Timeliness
To determine whether claimant’s proposed negligence claim could stand on its own if it were to be filed today (or if the court were to deem service of the proposed amended claim on April 5, 1996 to be the date of filing), the issue of timeliness must be addressed.
Section 9 (2) of the Court of Claims Act vests this court with jurisdiction to hear and determine claims against the State for the torts of its officers or employees. Any such claim, however, must comply with the time limitations imposed by Court of Claims Act § 10. Specifically, section 10 (3) requires a claim for damages stemming from the negligence of a State officer or employee to be filed within 90 days of the claim’s accrual. In the alternative, if a notice of intention to file a claim is filed within the 90-day period, a claimant has two years from the date of accrual within which to bring the actual claim.
In the instant case, the parties disagree as to when a negligence claim would have accrued. Claimant maintains that it accrued on September 26, 1995, when the Court of Appeals dismissed the appeal and denied leave to appeal. Prior to the conclusion of the appeals process, he contends, his damages were not ascertainable, and thus, he had no claim to file. Defendant argues that the claim accrued on March 20,1995, when the Second Department reversed the award rendered by DHR and dismissed the claim altogether. According to the State, this adverse decision adequately alerted claimant to his possible cause of action against the State. The question before the court is whether a claim stemming from the dismissal of a human rights lawsuit accrues upon the suit’s dismissal or at the conclusion of the appeals process, when the possibility of reversal no longer exists.
Under New York law, a " 'claim accrues when it matures, and the words "claim accrued” have the same meaning as "damages accrued.” ’ ” (Edlux Constr. Corp. v State of New York, 252 App Div 373, affd 277 NY 635; see also, Hudleasco, Inc. v State of New York, 90 Misc 2d 1057, affd 63 AD2d 1042.) Since claimant sustained no quantifiable "damages” as a consequence of DHR’s handling of his human rights complaint prior to the March 20, 1995 Appellate Division decision revers *9 ing his award, defendant does not contend that the claim against the State could have accrued prior to that date.
New York courts have addressed the impact of a pending appeal on a claim’s accrual date in various contexts, including malicious prosecution actions and indemnification lawsuits. "[T]he general rule is that the mere existence of a right of appeal does not preclude suit * * * and hence does not push back the date of accrual to the expiration of the time to appeal” (Karen v State of New York, 111 Misc 2d 396, 400, n 9). Thus, a claim against the State for malicious prosecution accrues "on trial court dismissal” of the indictment rather than upon appellate level affirmance (supra, at 400). Although a right of appeal existed when the indictment was dismissed, such appeal was optional, not mandatory, and consequently, the claim immediately accrued.
Likewise, in indemnification actions, a claim accrues when the parties enter into a stipulation of settlement (Hudleasco, Inc. v State of New York, 90 Misc 2d 1057, supra) or upon payment of a judgment by the party seeking indemnification (Relyea v State of New York, 59 AD2d 364). This is the point at which the claimant sustains ascertainable "damages”. While a right of appeal may exist, such appeal is optional, not mandatory, and an appeal challenging the adequacy of the judgment "will in no way change, alter or defer the accrual date established by the payment of these judgments” (supra, at 367; see also, Ton-Da-Lay, Ltd. v State of New York, 70 AD2d 742).
Claimant refers to Shah v State of New York (140 Misc 2d 16) in support of a later accrual date, but in fact that case also reinforces the rule that a claim accrues when further legal action becomes optional rather than mandatory. In Shah, an action brought by a laid-off State employee for breach of a collective bargaining agreement, the court held that the claim accrued upon one of two events: (1) when mandated grievance and arbitration procedures were exhausted, or (2) when claimant learned that the union failed to discharge its duty to fully pursue mandated procedures (supra). It did not matter, for purposes of determining accrual, that the employee could — but was not required to — seek judicial review of the grievance or arbitration result.
In the instant case, the New York State Division of Human Rights was under no statutory obligation to appeal the adverse decision handed down by the Appellate Division, the decision which cost claimant his award. While DHR chose to appeal, this step was optional, and accordingly, claimant *10 sustained "damages” on March 20,1995, the date of the Second Department’s ruling. It was on that date that claimant’s claim accrued, and the pendency of an optional appeal by DHR did not delay this accrual date.[6] Even if this court deemed claimant’s proposed negligence claim to have been filed on April 5, 1996, the date of service of the proposed amended claim, it would not be within the 90-day time frame prescribed by the Court of Claims Act.
It is the height of irony that this court is required by law to bar as untimely a claim for damages caused by almost a decade of delay in DHR’s resolution of a human rights violations complaint. Nevertheless, claimant’s proposed negligence claim was not timely on April 5, 1996 and would not be timely if filed today. Claimant’s only avenue for relief, therefore, is to obtain permission to late file his claim (Court of Claims Act § 10 [6]).
Late Claim
The jurisdictional deficiencies previously discussed bar the late filing of claimant’s constitutionally based causes of action, and unfortunately, claimant did not request leave to late file a claim sounding in negligence. Technically, therefore, we could deny the instant motion for permission to late file, require claimant to bring a new section 10 (6) motion based on a proposed claim asserting the negligence cause of action, and only then rule on the issue of whether such relief was warranted. Although the attendant delay would, in this instance, be of claimant’s own making, the court is reluctant to further prolong matters. The State addressed the negligence, as well as constitutional, causes of action in its submissions opposing the cross motion, and thus defendant will not be prejudiced if the court deems the cross motion to seek late filing of a proposed claim for negligence, identical to the language of the relevant portions of the proposed amended claim.
As the court has determined that the claim accrued on March 20, 1995, and a like claim between citizens would have to be filed within three years (CPLR 214), claimant faces no Statute of Limitations barrier with respect to his late claim *11 request. Additionally, in determining a motion for permission to file a late claim, the court must consider, among other factors, those set forth in Court of Claims Act § 10 (6).
In the instant case, claimant failed to timely initiate an action in this court due to the misunderstanding regarding the accrual date of his claim. New York courts have held that neither ignorance of the law (the claimant’s or the attorney’s) nor an attorney’s inattention to the case or inadequate office procedures provide acceptable excuses for delay (see, e.g., Erca v State of New York, 51 AD2d 611, affd 42 NY2d 854; Sevillia v State of New York, 91 AD2d 792).
However, while claimant’s delay in filing cannot be termed excusable, claimant asserts that the State has long had notice of the essential facts constituting the claim. Under these circumstances, that is undoubtedly the case. Additionally, defendant has had quite a full opportunity to investigate the circumstances underlying the claim since it was the State agency’s own action — or rather, inaction — that gave rise to the injury (see, Witko v State of New York, 212 AD2d 889; Bommarito v State of New York, 35 AD2d 458). Permitting the filing of an untimely claim, therefore, would not result in substantial prejudice to the State.
Further, it appears that there is no other remedy available to claimant for redress of alleged negligence on the part of the State. Although claimant has a suit pending in Federal district court, that action pertains to the alleged constitutional violations, and different considerations are relevant to any assessment of liability. In addition, the Eleventh Amendment of the United States Constitution bars claimant from bringing a negligence cause of action against New York State in Federal court and prohibits a Federal court from assessing money damages against a State (Port Auth. Trans-Hudson Corp. v Feeney, 495 US 299; Johnson v State of New York, 166 Misc 2d 333, 338-339; Rye Psychiatric Hosp. Ctr. v State of New York, 145 Misc 2d 706, revd on other grounds 177 AD2d 834, lv denied 80 NY2d 751). If this court were to deny claimant leave to file a late claim for money damages sounding in negligence, no equivalent remedy could be found.
Finally, to show sufficient legal merit to warrant late filing, a claimant must establish that the proposed claim is not patently groundless, frivolous, or legally defective and that there is reasonable cause to believe that a valid cause of action exists (Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1). Permitting a defective claim to be filed, even if the *12 other statutory factors supported the granting of claimant’s motion, would be meaningless and futile (Prusack v State of New York, 117 AD2d 729; Rosenhack v State of New York, 112 Misc 2d 967).
In the matter at hand, DHR took more than 10 years to resolve claimant’s charges of employment discrimination against Pepsico. Although it found claimant’s complaint meritorious, awarding him back pay with interest as well as compensatory damages, claimant ultimately received nothing as a consequence of the Second Department’s ruling that DHR’s "excessive delay” substantially prejudiced the employer.
Defendant contends that under the doctrine of sovereign immunity, the State cannot be liable for DHR’s conduct in investigating and determining the viability of a discrimination complaint. Although the State is absolutely shielded from suit when the acts giving rise to the claim are judicial or quasi-judicial functions (Tarter v State of New York, 68 NY2d 511), claimant’s action is not based upon DHR’s investigation techniques or its decision, which was in his favor. Rather, the proposed claim alleges that DHR performed its task so slowly as to be negligent, costing him his award.
DHR has a duty under the Human Rights Law to investigate discrimination complaints and to resolve them appropriately. While the law does not require DHR to resolve each complaint by an inflexible date (Matter of Sarkisian Bros. v State Div. of Human Rights, 48 NY2d 816), it seems apparent to this court that there is a nondiscretionary duty to act at least expeditiously enough that its decisions will not be overturned by the Appellate Division on the grounds of prejudicial delay.
A dismissal for this reason will inevitably result in further harm to the original injured party, the complainant, who will have no right of action against the employer, because only a dismissal based on "administrative convenience” tolls the Statute of Limitations applicable to actions that can be heard in a judicial forum (Executive Law § 297 [9]). Dismissal for the other statutorily anticipated reasons — lack of jurisdiction or lack of reasonable cause to believe discrimination occurred — relate to the merit and/or viability of the complaint (Marine Midland Bank v New York State Div. of Human Rights, 75 NY2d 240, 245). Dismissal because of undue and prejudicial administrative delay, on the other hand, says nothing about the complaint’s merit or the complainant’s personal diligence and willingness to proceed.
The Court of Appeals has held that the DHR defendant (Pepsico), whose improper actions may have begun the entire pro *13 cess, is entitled to a remedy when the actions of the agency result in prejudice. If this is the case, there must be a remedy also for the complainant, who may have already suffered from discriminatory treatment and who has equally little control over the agency’s actions. Courts have recognized that for a complainant to lose, altogether, his or her right to pursue the discrimination claim because of agency delay would be patently unfair (State Div. of Human Rights v Board of Educ., 59 AD2d 1048, 1049) and "repugnant to the purposes of the Human Rights Law” (State Div. of Human Rights v Great Atl. & Pac. Tea Co., 46 AD2d 1001, 1002). The proposed negligence cause of action is meritorious.
The court exercises its discretion to grant claimant’s motion and permit the proposed negligence claim to be late filed. Within 60 days of the date of filing of this order, claimant shall file the claim and serve a copy of it upon the Attorney-General in the manner required by section 11 (a) of the Court of Claims Act.

. The Second Department also held that Pepsico was denied its due process rights because the DHR Commissioner who issued the Ferrer determination had previously appeared as counsel for DHR on the matter. This error would have required annulment of the determination.

. The court notes that claimant has a suit pending in United States District Court, Southern District of New York, for violation of his Federal due process and equal protection rights (see, Ferrer v Cuomo, US Dist Ct, SD NY 1996, 95 Civ 9418).

. The Court of Appeals is scheduled to hear oral argument on September 4, 1996.

. Factors considered were (1) whether the provision expressed only general principles or described the right in detail, (2) whether a specific remedy is referenced or implied, (3) whether the statute contains direction for the State Legislature to act, (4) the provision’s legislative history, and (5) its place within "the scheme of rights established in the constitution as a whole” (Shields v Gerhart, supra, 163 Vt, at 224, 658 A2d, at 928).

. This is not a situation involving a continuing injury, where some injury becomes apparent but the claim does not actually accrue until the "extent of damages is ascertainable” (Otis El. Co. v State of New York, 52 AD2d 380, 382). To the contrary, in the matter at hand, the full extent of claimant’s damages was immediately apparent: claimant had lost his entire award, not merely some unascertainable part of it, and the Appellate Division’s decision would either stand or be reversed. At no time were the amount of damages involved "unascertainable”.