[657 NYS2d 490]

Inter-Power of New York, Inc., Respondent, v State of New York, Appellant.

Third Department, May 15, 1997

APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Michael S. Buskus* and *Peter H. Schiff* of counsel), for appellant.

*Chadbourne & Parke, L. L. P.,* New York City *(Thomas J. Hall* and *Allison Brenner* of counsel), for respondent.

## OPINION OF THE COURT

MIKOLL, J.

Claimant is suing the State for damages stemming from an aborted contract it had to sell electricity to Niagara Mohawk Power Corporation (hereinafter NiMo) from a facility it was to build in the Town of Halfmoon, Saratoga County. The contract included a provision that NiMo could terminate the contract if the project was not on line by December 31, 1993. Claimant failed to bring the project on line by December 31, 1993. Attempts to extend the on-line date failed. NiMo notified claimant by letter dated November 19, 1992 that it was terminating negotiations to extend the contract. Claimant thereafter unsuccessfully petitioned the Public Service Commission (hereinafter PSC) to compel NiMo to revise the contract. Claimant then filed a suit against NiMo asserting, *inter alia*, that NiMo was estopped from exercising the option to cancel the contract which proved futile *(see, Inter-Power of N. Y. v Niagara Mohawk Power Corp.,* 208 AD2d 1073, 1074).

The instant claim against the State is derived from the theory that the Department of Environmental Conservation (hereinafter DEC) caused a 15-month delay in the permit approval process claimant was required to undergo to obtain a certificate under Public Service Law article VIII from the State Board on Electric Generation Siting and Environment and the eventual cancellation of the project. Claimant was required, *inter alia*, to prepare certain air quality analyses for the approval process. In order to prepare them, it needed to secure information as to air emissions of various industrial and institutional facilities located in the Capital District. These were secured by purchasing inventories from DEC which were to disclose the location of major air emission sources, the conditions under which each source emitted pollutants and, for certain pollutants, the maximum amounts of such pollutants which could be emitted legally by sources in the inventories.

Claimant alleges that from 1985 to 1991, DEC supplied it with air emission inventory data and provided guidance and oversight to claimant in the application process and that securing a certificate was critical to claimant's obtaining financing and starting construction on the projects. Claimant alleges four separate causes of action based on negligence, negligent misrepresentation, breach of implied warranty and breach of implied contract. A notice of intention to file a claim was served on January 23, 1993 and the claim was served and filed in November 1994.

The State answered and interposed the defenses of untimeliness of the claims, the Statute of Limitations, failure to comply with State Finance Law § 112, contributory negligence, assumption of risk on claimant's part and estoppel. Claimant moved to dismiss the State's first two defenses or, in the alternative, for permission to file a late claim pursuant to Court of Claims Act § 10. The State cross-moved for summary judgment alleging that the claim was untimely under Court of Claims Act § 10, barred by the Statute of Limitations and that there was a lack of subject matter jurisdiction (see, CPLR 3211 [a] [2]).

The Court of Claims concluded that the claims "based upon negligence must be filed within ninety days of accrual unless a notice of intention is filed within that time and then the claim must be filed within two years of accrual". The court also stated that "[c]laims based upon breach of contract or implied warranty must be filed within six months of accrual unless a notice of intention is filed within that time and then the claim must be filed within two years of accrual".

The Court of Claims found that claimant could not ascertain or fully evaluate its damages until November 19, 1992 when NiMo announced that it would enforce the December 1993 deadline and held that the claim accrued on that date. The first and second affirmative defenses were stricken and the State's cross motion to dismiss was denied. This appeal by the State ensued.

The State urges that the "when damages are ascertainable" line of cases used in property damages cases should not apply in the context of regulatory governmental actions. It urges that we adopt the standard that such claims must be brought no later than 90 days from when the agency erred. It argues that by August 27, 1991 claimant knew of DEC's errant data to which DEC admitted and that this should be the accrual date of its claim.

We are unconvinced. The State's position would require us to speculate that as of August 28, 1991 there would be a significant delay and the contract option to cancel would be exercised. We note that claimant's damages were not yet ascertainable at such point and any claim filed would have been premature. Though DEC supplied erroneous initial data causing a delay, claimant continued to forge ahead with the project, seeking new data and attempting to extend the contract when the second data also proved erroneous and, then, appealed the cancellation of the contract to the PSC, albeit unsuccessfully. The Court of Claims correctly relied on the proper standard, that is, the cause of action accrues when damages are ascertainable (*see, Waters of Saratoga Springs v State of New York,* 116 AD2d 875, 877, *affd* 68 NY2d 777). The standard has been modified to "when damages are reasonably ascertainable" (*Flushing Natl. Bank v State of New York,* 210 AD2d 294). The Court of Claims' order is entirely appropriate and is affirmed.

CARDONA, P. J., MERCURE, CREW III and CASEY, JJ., concur.

Ordered that the order is affirmed, with costs.