**In re Charles & Jill STANTON, Debtors.**

**Charles & Jill Stanton, Plaintiffs,**

**v.**

**Texas Drug Company, Defendant.**

**Bankruptcy No. 99–62250.**
**Adversary No. 00–6028.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Oct. 20, 2000.

William Sheehy, Wilson, Sheehy, Knowles, Robertson & Cornelius, Tyler, TX, for Plaintiffs.

Jim Echols, Saunders, Schmidt, Echols & Dennis, P.C., Tyler, TX, for Defendant.

## MEMORANDUM OF DECISION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BILL G. PARKER, Bankruptcy Judge.

This matter is before the Court upon the Motion for Summary Judgment (the "Motion") filed by the Plaintiffs, Charles and Jill Stanton. Based upon the Court's consideration of the pleadings and the proper summary judgment evidence submitted by the parties, including a Stipulation of Facts, the Court concludes that the Plaintiffs' Motion for Summary Judgment should be granted.

## I. JURISDICTION

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has authority to enter appropriate orders and judgments in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This adversary proceeding was commenced by the Plaintiffs, Charles and Jill Stanton, in order to avoid the security interest asserted by the Defendant, Texas Drug Company (the "Defendant") on the grounds that such security interest held by the Defendant was unperfected as of the commencement of this case. Charles H. Stanton operates a pharmacy in Elkhart, Texas. Though no assumed name certificate has ever been filed regarding that business, it is often referred to as the Elkhart Pharmacy. At no time has the Plaintiff's pharmacy business ever been operated as anything but a sole proprietorship.

To secure the payment of certain indebtedness, Charles H. Stanton granted to Texas Drug Company a security interest in certain assets. The UCC–1 financing statement executed by Stanton references a security interest in

> all inventory, work in process or materials used or consumed in Debtor's business whether now owned or hereafter acuired (sic) whether in the possession of the Debtor warehoseman (sic), or any person together, (sic) all proceeds.

In addition to the misspellings and grammatical errors in the description of the collateral, the Defendant also erroneously listed the Debtor's name as the "Elhart Pharmacy," with no reference to Charles H. Stanton, individually, or to the fact that Stanton owned Elkhart Pharmacy as a sole proprietorship. That UCC–1 financing statement was filed with the Secretary of State of Texas on June 23, 1997.

On October 25, 1999, the Plaintiffs filed a joint voluntary petition for relief under chapter 13 of the Bankruptcy Code.[1] On February 10, 2000, the Defendant filed a claim in the Plaintiffs' bankruptcy case, asserting a secured claim in the amount of $173,690.18 and attached, as proof of its right to assert a secured claim, a copy of its security agreement and the UCC–1 financing statement described above.

The Plaintiffs, on May 1, 2000, initiated this adversary proceeding to avoid the asserted security interest of the Defendant on the grounds that it was unperfected as of the date of the commencement of the bankruptcy case, and therefore subject to avoidance under 11 U.S.C. § 544. They have moved for summary judgment based upon the Defendant's failure to identify the true debtor, Charles H. Stanton, as the debtor-party on its UCC–1, as well as upon the misspelling contained in the debtor-party identification portion of that document which identifies the debtor as the "Elhart Pharmacy." The Plaintiffs have presented summary judgment proof that a UCC search regarding "Charles H. Stanton" and "Elkhart Pharmacy," while revealing the existence of other secured claims asserted in this proceeding, failed to reveal the existence of a security interest held by the Defendant, Texas Drug Company. The Defendant failed to file any response to the Plaintiffs' Motion for Summary Judgment.[2]

1. That case was subsequently converted to a Chapter 11 on May 31, 2000.

2. This is notwithstanding the directives of Local District Court Rule CV–56(b), which, pursuant to Local Rule of Bankruptcy Procedure 7056, governs the consideration of summary judgment motions in adversary proceedings pending in this Court. Rule CV–56(b) states that:

(b) Any party opposing the motion should serve and file a response that includes in the text of the response or as an appendix thereto, a "Statement of Genuine Issues." The response should be supported by appropriate citations to proper summary judgment evidence as to which it is contended that a genuine issue of material fact exists.

## III. DISCUSSION

### A. Standard for Summary Judgment.

The Plaintiffs bring their Motion for Summary Judgment in the adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *quoting* FED.R.CIV.P. 56(c). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *citing* FED.R.CIV.P. 56(e). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, Id.* at 248, 106 S.Ct. at 2510.

The parties have identified no factual dispute in need of resolution[3] and

3. This Court is not required to engage in a painstaking examination of the record in an attempt to find a material issue to try. Local District Court Rule CV–56, again incorporated into this proceeding by Loc. R. Bankr.P. 7056, states, in relevant part, as follows:

(c) In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of ma-

the Plaintiffs have presented their motion for summary judgment based upon application of appropriate law. For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995)["A federal court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly."].

B. *Perfection of the Defendant's Security Interest.*

■ Under the "strong-arm" provisions of 11 U.S.C. § 544, a trustee, on the date a debtor files a bankruptcy petition, obtains the status of a hypothetical lien creditor.[4] *See generally,* 5 COLLIER ON BANKRUPTCY ¶ 544.05 at p. 544–9 (15th ed. rev.2000). This statutory power provides the trustee with the ability to seek, in a manner consistent with state law, priority over other claims and interests in property which remain unperfected as of the date of the commencement of the bankruptcy case. In a chapter 11 case, a debtor-in-possession is vested with these avoidance powers[5] and may exercise them on behalf of general unsecured creditors, notwithstanding any prior knowledge or practices of the debtor prior to the filing of the case, since a debtor-in-possession is conceptually separate from a debtor for purposes of bankruptcy law. *Boatmen's Bank of Benton v. Wiggs (In re Wiggs)*, 87 B.R. 57, 58 (Bankr.S.D.Ill.1988)["The debtor-in-possession, though physically the same as the debtor, is conceptually separate for purposes of bankruptcy law and is armed with § 544(a) powers without regard to any notice or knowledge of the debtor's practices."]; *Matter of International Gold Bullion Exchange, Inc.*, 60 B.R. 256, 260 (Bankr.S.D.Fla.1986)[finding that "it is well established that even a debtor-in-possession which is, in actuality, the same entity as the debtor is nevertheless deemed to be separate and distinct from the debtor under bankruptcy law, and is armed with Section 544 powers without regard to any notice or knowledge of the Debtor's practices"].

■ The extent of the trustee's rights, remedies and powers as a hypothetical lien creditor is governed by state law. *In re Muller*, 185 B.R. 552, 554 (Bankr. M.D.Tenn.1995)["The trustee acquires the status of a judicial lien creditor by virtue of federal law, but applicable state law determines what powers that status confers," *citing Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir.1994)["[The scope of § 544(a) ] avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing."]]; *see also Michael v. Martinson (In re Michael)*, 49 F.3d 499, 500 (9th Cir.1995). Texas law provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is

terial fact for trial before entering summary judgment.

4. 11 U.S.C. § 544(a) states that:
The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the filing of the commencement of the case, and that obtains, at such time or with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; ...

5. See 11 U.S.C. § 1107(a) which provides, in relevant part, that:
Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

perfected. TEX. BUS. & COM.CODE ANN. § 9.301(a)(2) (Vernon 1991). *See also, In re Hancock,* 126 B.R. 270, 273 (Bankr. E.D.Tex.1991). Therefore, in order to maintain an interest in property senior to that held by a debtor-in-possession as a hypothetical lien creditor, a creditor must possess a perfected security interest on the date the debtor files its bankruptcy petition. *In re Masters,* 137 B.R. 254, 259 (Bankr.S.D.Ohio 1992).

■ The determination of whether a creditor has properly perfected its security interest is also governed by state law. Though the Defendant in this case did file a financing statement, the sufficiency of that financing statement, and hence the effectiveness of the Defendant's efforts to perfect its security interest in the Plaintiffs' property, is governed by TEX. BUS. & COM.CODE ANN. § 9.402(g) (Vernon Supp. 1999) which provides, in relevant part:

> A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names of partners. *Filing under a trade name or assumed name alone shall not be sufficient to perfect a security interest unless the trade name or assumed name is so similar to the debtor's legal name that the trade name or assumed name filing would be discovered in a search of the filing officer's records ..., conducted in response to a request using the legal*

*name of the debtor...* (emphasis added).[6]

■ In this case, Texas Drug failed to file a financing statement which referenced the proper name of the Plaintiff–Debtor. The uncontested summary judgment evidence demonstrates that Charles H. Stanton always conducted his pharmacy business as a sole proprietorship and, thus, the proper name of the debtor in this circumstance is Charles H. Stanton. The uncontested summary judgment evidence further demonstrates that Charles Stanton never operated his pharmacy business under any assumed name certificate, notwithstanding the fact that people may have customarily referred to the business as the Elkhart Pharmacy.

Notwithstanding the proper identification of the debtor entity, Texas Drug attempted to perfect its security interest by filing a financing statement under the name of Elkhart Pharmacy but, due to a typographical error in the UCC–1, it instead placed the world on notice of a security interest against "Elhart Pharmacy." Setting aside the misspelling for a moment, the security interest would not have been properly perfected, even if the name had been spelled correctly.

■ § 9.402(g), sometimes referenced as the Texas non-uniform amendment, comprises an integral part of the system designed to notify third parties that a debtor's property is or may be encumbered. It compels a perfecting creditor to

**6.** Though not applicable to this dispute, the Court notes that Texas has adopted the 1999 revisions to Article Nine of the Uniform Commercial Code as promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws. See 3 TEX. BUS. & COM.CODE ANN. (Vernon Supp.1999) at pp. 165–245. Those revisions become effective in Texas on July 1, 2001. The necessity of properly naming the debtor in the financing statement will be addressed by revised § 9.503 which provides, in relevant part, that:

(a) [A] financing statement sufficiently provides the name of the debtor:

(4) in other cases [other than if the debtor is a registered organization, decedent's estate, or a trustee of a trust]:
(A) if the debtor has a name, only if the financing statement provides the individual or organizational name of the debtor....
(b) [A] financing statement that provides the name of the debtor in accordance with Subsection (a) is not rendered ineffective by the absence of ...
(1) a trade name or other name of the debtor; ... and
(c) [A] financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor.

take particular care in its identification of the debtor and to avoid the utilization of a trade name in lieu thereof in order to insure the accuracy and reliability of the information provided to inquiring parties regarding the existence of security interests held by earlier creditors.[7] This amendment was adopted to relieve subsequent creditors of the difficult burden of searching for all possible trade names of the debtor, when that burden can more easily be shouldered by the first creditor, who can insure the accuracy of the notification system by carefully documenting the name of the debtor from whom it has received a security interest. *See* Jerald M. Pomerantz, *Trade Name Filings Under UCC Article 9: Anatomy of a Nonuniform Amendment,* 47 CONSUMER FIN. L.Q. REP. 34–36 (1993).[8] Thus, by the very terms of the statute governing the perfection of security interests in Texas, the filing of this UCC–1 by Texas Drug, identifying the debtor as Elkhart Pharmacy, was ineffective as a matter of law to perfect the security interest granted to it on the Debtor's inventory and the proceeds arising therefrom. That conclusion is mandated, even if one were to assume that Elkhart Pharmacy was in fact a trade name of this Debtor and that it was correctly spelled on the UCC–1.

■■■■ Notwithstanding the application of § 9.402(g), the Court would further conclude that, even assuming that it was a proper trade name of the Debtor, the typographical error regarding the spelling of Elkhart Pharmacy also renders ineffective the filing of the financing statement by the Defendant. The analysis for determining the validity of the UCC–1 filed by Texas Drug in light of the misspelling of the Debtor's name begins with § 9.402(h) of the Texas Business and Commerce Code which provides that

> a financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

The standard, therefore, is whether the filing with that misspelled name would be seriously misleading to a reasonable prudent subsequent creditor. *Continental Credit Corp. v. Wolfe City National Bank,* 823 S.W.2d 687, 689 (Tex.App.—Dallas 1991, no writ)["The critical inquiry in assessing whether the creditor has perfected a security interest is whether a reasonably prudent subsequent creditor would have discovered the prior security interest."]. Expressed in other words, the filing of a financing statement with a misspelled name is ineffective only if it fails to meet the stated objective of providing adequate notice to inquiring potential creditors of the existence of the current security interest.

■■■■ Yet the risk of loss, particularly with regard to misspellings of the debtor's name, must primarily rest upon the initial filing creditor. As was recognized in *ITT Commercial Finance Corp. v. Bank of the West,* 166 F.3d 295, 304 (5th Cir.1999)[9], which affirmed a summary judgment based upon a holding that the omission of a hyphen in the debtor's legal name was seriously misleading, thereby denying the effectiveness of a UCC–1 against a subsequent creditor, "[r]easonably prudent sub-

---

**7.** As the current comment to the Uniform Commercial Code suggests, "[t]rade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis of a filing system." TEX. BUS. & COM.CODE ANN. § 9.402(g), comment 7 (Vernon Supp.1999).

**8.** The amendment was a legislative response to the Fifth Circuit decision in *In re McBee,* 714 F.2d 1316 (5th Cir.1983) which held that a filing under a trade name was not seriously

misleading, even though the trade name and the debtor's actual name shared no words in common, if the subsequent creditor had reason to know to search under the purported trade name.

**9.** Though reversed on other grounds by the circuit opinion, one should also consult the helpful analysis of this issue in *ITT Commercial Finance Corp. v. Bank of the West,* 37 F.Supp.2d 829 (W.D.Tex.1996).

sequent creditors are not required to search under every conceivable misspelling of a debtor's name," *citing Transamerica Commercial Finance Corp. v. General Electric Capital Corp. (In re Wardcorp, Inc.),* 133 B.R. 210, 215 (Bankr.S.D.Ind. 1990)["Any rule that would burden a searcher with guessing misspellings and misconfigurations of a legal name ... would not provide creditors with the certainty that is essential in these commercial transactions."]. Although the Circuit admitted that such a result appeared harsh at first blush, it found that

> placing on the filing creditor the burden of ascertaining and filing under a debtor's legal name is necessary to effectuate the UCC's policy of certainty and simplicity in these commercial transactions.

166 F.3d at 304, *citing In re Wardcorp., Inc.,* 133 B.R. at 216–17.

The result of applying that principle in this case is less distressing. Even if it had been shown that it was a proper trade name for the Debtor, there is a substantial difference between "Elkhart Pharmacy" and "Elhart Pharmacy." The Plaintiffs' summary judgment evidence demonstrates that a UCC search solely under the name of "Elkhart Pharmacy" failed to reveal the existence of the security interest claimed by Texas Drug. Under the foregoing authorities, and in light of the fact that the Defendant has presented no facts from which this Court could reasonably conclude that a reasonably prudent creditor lending money to Elkhart Pharmacy (much less Charles H. Stanton) could have discovered the existence of its security interest, Texas Drug must bear the consequences for its lack of diligence and care.

## IV. CONCLUSION

This Court accordingly concludes that the Motion for Summary Judgment filed by the Plaintiffs, Charles and Jill Stanton, should be granted and, in light of the unperfected status of the security interest held by Texas Drug as of the date of the commencement of the Plaintiffs' bankruptcy case and the avoidance powers held by the Plaintiffs as debtors-in-possession in their chapter 11 case, the security interest held by Texas Drug Company in the assets of the Debtors pursuant to that certain UCC–1 financing statement filed with the Secretary of State of Texas on June 23, 1997 is hereby avoided and the claim of Texas Drug Company in the Plaintiffs' bankruptcy case is hereby declared to be unsecured. An appropriate order and a judgment will be entered which are consistent with this opinion.